# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| LAWRENCE (LARRY) W. SINCLAIR | ) | |
| Plaintiff, Pro Se | ) | |
| | ) | Case No. 5:23-CV-109 |
| VS | ) | |
| | ) | |
| BRIAN MARK KRASSENSTEIN, et al | ) | |
| Defendants. | ) | |

## PLAINTIFFS RESPONSE TO DEFENDANTS MOTION TO DISMISS PURSUANT TO FRCP 12 (b) (6) and ALTERNATIVE MOTION TO TRANSFER VENUE (Dkt 21)

COMES NOW PLAINTIFF, Lawrence (Larry) W. Sinclair **PLAINTIFFS AMENDED RESPONSE TO DEFENDANTS MOTION TO DISMISS PURSUANT TO FRCP 12 (b) (6) and ALTERNATIVE MOTION TO TRANSFER VENUE (Dkt 21)** and states as follows.

Plaintiff filed his complaint on October 3, 2023, asserting diversity of citizenship pursuant to 28 U.S.C. § 1332; Plaintiff is proceeding *in forma pauperis;* plaintiff served Complaint, Summons, NOTICE AND ACKNOWLEDGMENT FOR SERVICE BY MAIL (Form SDTX-DC-30), NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS (Form AO 398 Rev. 01/09),  WAIVER OF THE SERVICE OF SUMMONS (Form

AO 399 Rev. 01/09) with postage prepaid return envelopes on defendants mailed US Postal Service Postage Prepaid Priority Mail signature required on October 24, 2023. Defendants Brian Krassenstein, E&B Advertising and Forum Advertising received on October 27, 2023 as witnessed in attached Exhibit B (3 pages) and Edward Krassenstein received on October 28, 2023 as witnessed in attached Exhibit A. (Both these exhibits have been previously filed with the Court in **Dkt 11.** Plaintiff did so despite Defendant's publicly publishing they would refuse to comply with their duty under Fed.R.Civ.P. 4(d)(1).

After which Plaintiff filed Motion for Service by US Marshals (Dkt 11) which was GRANTED and Defendants then agreed to accept service from US Marshals Service via email on January 9, 2024. Defendants have not yet answered, and Defendants concurrently filed a motion to dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Dkt 20) , a second motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt 21), and in the alternative, Defendants request a transfer of venue pursuant to 28 U.S.C. § 1404(a).on both. Defendants duplicate alternative motions to transfer venue as well as defendants inserting said motions into defendants' response to plaintiffs Motion for Restraining Order (Dkt 23) byway of submitting a "Proposed Order" including (Dkt 34-1).

Plaintiff prior to filing this above numbered actioned directly notified Defendants immediately of becoming aware of their repeated false and libelous publications on the platform X formerly known as Twitter of them being false, provided defendants direction to evidence showing them to be false and requested defendants retract them, apologize and admit they published the false statements about plaintiff without first verifying their truthfulness. Defendants chose to instead double down, continue to repeatedly publish the false statements and have continued to do so even since filing and after being serve summons in this action.

## I: Motion to Dismiss Pursuant Ruble 12(b)(6)

Defendants by and through counsel have filed a Motion to Dismiss claiming lack of subject matter jurisdiction. As grounds for defendants' motion, they claim that plaintiff lacks diversity in this action because as alleged by defendants, items published as used as exhibits in defendants motion demonstrate plaintiff does not reside within the State of Texas but instead resides in Mexico based on information defendants found on the internet. The same practice which resulted in plaintiffs cause of action to be filed in the first place.  Defendants  use on Google to make claims and statements of fact which the flat out refuse to verify the factual truthfulness not only demonstrates defendants history of wanton disregard for the truth and reckless disregard to its effects on others It is downright dangerous to those they target as well as innocent individuals they put in the middle.

It is important to note here that Defendants while having no problem asking plaintiff to do Zoom interviews, or X (formerly known as Twitter) Spaces interviews for their financial gain, or their continued repeated defamatory, libelous published statements even to this date against plaintiff.

Defendants argue Plaintiffs complaint does not state a claim for which relief can be granted and alleges Texas State Law mandates dismissal.

(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. (Dkt 21 Page  10 A ¶1)

Plaintiff will address each one in their stated order. As to number**(1) published a**

**statement;,** there is no question defendants Brian and Edward Krassenstein published statements on X  which both made statements that plaintiff "was convicted of fraud. It is literally proven he was convicted of fraud." "Sinclair has a 27 year criminal history including multiple convictions for fraud, check fraud …" and admitted they published what they found on the internet from 15 years earlier. Defendants admit in email and direct messages to plaintiff they published what they found on the internet from 15 years earlier.



← **Post**

 **Ed Krassenstein** ✔ ◩
@EdKrassen

**Subscribe** ···

The same people who brush off Donald Trump cheating on all of his ex-wives, including Melania Trump with Stormy Daniels, are the same ones who are trying to convince America that Barack Obama and Larry Sinclair had an affair.

For what reason?  Who cares? Obama hasn't been President for over 6 years!

Sinclair has a long criminal history, including being convicted for forgery, fraud and larceny.

Does it matter?



9:54 AM · Sep 6, 2023 · **949.2K** Views



Brian Krassenstein ✔ 🅇
@krassenstein

This story was litigated in the court of public opinion in 2008. Larry Sinclair failed to pass a polygraph test, he proved that he was dishonest and a fraud over a 27-year span where he was convicted of multiple felonies involving his lack of honesty.

Why are we relitigating it now when it doesn't matter one bit?  Is this Tucker or X or "Tabloid on X"

5:00 PM · Sep 6, 2023 · **835.7K** Views

3,097          331          3,639          91







**Post**

**Ed Krassenstein** ✔ 🅺
@EdKrassen

I just wanted to quickly address the absurd **$45M defamation lawsuit brought by Larry Sinclair** against me and @Krassenstein.

His allegations that we defamed him by claiming that he was a convicted fraudster, is not defamation (even if we said it) because he was in fact convicted of forgery which is a form of fraud.

His allegations that we defamed him by claiming he had a 27-year criminal history, which is widely reported by various organizations dating back over 10 years, is ridiculous. According to reports and criminal records, he was charged with crimes starting in 1977, and he was also reportedly arrested in 2007. Additionally he was charged or convicted of other crimes within that 30-year time period.

His allegations that we said he failed 2 polygraph tests, is not true as far as I know, even though he claims we did say it in his lawsuit. Regardless there are reports that he did fail 2 polygraph tests in 2008.  Additionally there are documents showing his polygraphs resulted in an evaluation of "deception indicated," although Sinclair claims that additional review of those results showed that he was not deceptive.  That doesn't change the fact that he originally failed the polygraph tests when taken, according to the individual who administrated the test at the time.  This individual is a world-renown polygraph administrator.  Even if we did make the claim that he failed 2 tests, which I haven't seen any evidence of us saying, it is still true that he initially failed a polygraph test, thus this is not defamation.

While the lawsuit appears to be filed in US court in Texas, Sinclair is apparently trying to convince the courts that he can't afford to pay the fees.  So far, we have not been served, nor do we know if we will be.  We are strongly considering a counter lawsuit because of lies he has posted about us, that we believe constitutes defamation, as well as examining additional legal course of action.

Defendants  were provided actual list of plaintiffs criminal history which ran from

1980 to 1986 and did not include a single charge nor conviction for ant crime identified as FRAUD, but chose to continue to this very date to make those false statements. Defendants were given direct information from an independent expert as to the 2011 discovery that the alleged failing of two 2008 polygraph exams was also false. In Aug 2011 a video of the 2008 Polygram exams defendants refer to in the repeated publications saying plaintiff failed polygraph exams shows the "expert" examiner defendants refer to admitting plaintiff was found to be truthful by the Polyscore which is completely without any human bias. The same video also shows the same "expert" examiner defendants refer to Ed Gelb admitting to Robert Braddock plaintiff passed while showing his (Gelb) outright bias to plaintiff and his determination to find plaintiff as being untruthful and even discussed how they planned to do so. Regardless of this evidence and facts made known to defendants they continued to publish the false claims anyway.

As to number *(2) that was defamatory concerning the plaintiff*;  there is no question defendants repeated statements are and were false. Plaintiffs' actual criminal history  consists of Five (5) cases,  Two of which resulted from 2 events in 1980 one in Cochise County Arizona Case Number 10254, one from Denver County Colorado Case number 1981CR365 ,  One case 1985 Broward County Florida Case number 85-5875CF,  Two cases from 1986,  1986 Miami-Dade County case number 86-017266 and One case Jefferson County Colorado  case number 1986CR1349 none of which list a single charge or conviction as FRAUD nor do any refer to or accuse the plaintiff of being a "con man" or "fraudster."

Defendants in addition to publishing repeated statements plaintiff had multiple convictions for fraud  they repeatedly published knowing false statements

claiming plaintiff had a 27 year criminal history with full knowledge it was false and defamatory. Defendants not only knew their statements which the continue to republish to this day were false and defamatory they did so and continue to so solely to defame and libel plaintiff.

Defendants despite being provided evidence that their claims of plaintiff failing polygraph exams was false along with evidence the "expert" defendants repeatedly referred to lied and is on video of his own making admitting to it, defendants continued to make their false claims with full knowledge of them being false to defame plaintiff.

As to number ***(3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement*** Defendants admission they published what they found on the internet that had been on the internet  for years and they found no evidence plaintiff made any effort to remove it from the internet in itself demonstrates defendants sheer negligence, and their repeatedly publishing the false statements  in itself demonstrates defendants acted with negligence.

The fact that defendants published and continued to repeatedly publish their false statements with full knowledge of them being false after being provided  more than enough to show them false, and continue to do even to this day clearly demonstrates malice on behalf of defendants even though plaintiff is not a public figure requiring such showing.

As to Defendants assertion  **Plaintiff's complaint indicates that Plaintiff is a libel-proof plaintiff**  thereby requiring Plaintiffs complaint to be dismissed.

1. The mere existence of a criminal past by a Plaintiff in a Libel & Defamation action does not in itself make plaintiff a Libel-proof plaintiff.

2. This doctrine recognizes that certain plaintiffs with criminal convictions who are notorious for their past criminal acts have such poor reputations that they are unlikely as a matter of law to recover more than nominal damages for an allegedly defamatory publication.

3. Criminal convictions dating back 38 to 43 years ago no matter how much defendants would like to think has given plaintiff such a bad reputation that defendants libel could not possibly harm plaintiffs reputation any lower than it already is need to either be criminal convictions for which plaintiff is notorious for said past criminal acts, or defendants must demonstrate plaintiffs reputation is of such a poor state, neither of which can be shown.

Plaintiff's reputation in the community even after 2008 and with full knowledge of plaintiffs past by those in the community is quite good.  Plaintiff learned fast that when it comes to politics you can been looked at with high esteem until you are seen as a threat to a politicians power, office or influence but it doesn't take away from the position before it becomes political. Below plaintiff has inserted very publicly available demonstrations that defendants belief plaintiffs community reputation is so low, it simply is not and will not be true.

Plaintiff news coverage on 2016 Community Thanksgiving where residents attribute less crime and drug activity in the community to Plaintiffs actions

Cocoa Neighbors gather for community Thanksgiving Dinner

https://www.clickorlando.com/community/2016/11/24/cocoa-neighbors-gather-for-community-thanksgiving-dinner/

**Cocoa Children receive early Christmas gifts from neighborhood Santa**

Broadmoor Acres man gets results again for dozens of families

https://www.clickorlando.com/news/2016/12/24/cocoa-children-receive-early-christmas-gifts-from-neighborhood-santa/?fbclid=IwAR0JPVU9nEXBtgk2iuV_0Ysx2Fdgnqg0tg7PZOc4E768_Id4hPi702Edm1o

**Broadmoor Santa spreads Christmas joy and community spirit throughout Cocoa neighborhood** (note in this article Cocoa Mayor Henry Parrish is in video stating they support Sinclair 100% who has single handily restore Cocoa's oldest community)

https://www.floridatoday.com/story/news/2017/12/22/broadmoor-santa-spreads-christmas-joy-and-community-spirit-throughout-cocoa-neighborhood/974813001/?fbclid=IwAR0u3_vbvGqPrOQNEIIa8PjlsCd1ylAJOl74bHWFWAzGrua6JZF99yKhdqw

**Activist gets results by transforming crime-ridden Cocoa neighborhood**

https://www.clickorlando.com/getting-results/2017/12/14/activist-gets-results-by-transforming-crime-ridden-cocoa-neighborhood/

**First homes to be constructed in Cocoa neighborhood in nearly 70 years**

https://www.clickorlando.com/news/2019/08/14/first-homes-to-be-constructed-in-cocoa-neighborhood-in-nearly-70-years/

**Space Coast Inspiration Awards Stars Some of the most Inspirational people along Florida's Space Coast will be Honored**

https://spacecoastliving.com/october-13-inspiration-awards-stars-space-coast-leaders-and-world-inspiring-singer-kechi/

The Space Coast Inspiration Awards were presented to a constellation of Space Coast Civic Stars..

https://spacecoastliving.com/inspiring-community-leadership/

With full knowledge of Plaintiffs past as defendants mention as being so damaging to plaintiffs reputation, did not stop plaintiff from receiving the endorsements of the Cocoa Police Officers Union or the Laborers' International Union of North America Local 630 in 2018 Mayoral race even after his opponents had the local news paper run the same type of act as defendants. Because the truth was known and no amount of republishing lies and false statements will or can change the truth.

> *"Sinclair has his supporters, though, including endorsements from the Coastal Florida Police Benevolent Association and the Laborers' International Union of North America Local 630."*

Contrary to Defendants argument or claims, plaintiff is not Notorious known for his past bad decisions, plaintiff is actually known as one of the most giving, generous, helpful, dedicated and sincere individuals around. Plaintiff can if the Court so wishes produce document after document from individuals who despite plaintiffs past bad decisions 38 plus years ago, they have added plaintiff to emergency contact at their children's schools, added him as authorized pickup person to pick their kids up for school, entrusted with copies of the keys to their homes, vehicles etc in event of lost or lock out incidents, how plaintiff not only rushed their children to hospital ER but stayed with them and even contracted HFM from one child without a second thought as to his possibly becoming ill. Or from former co-workers who were being cheated out of pay by a general manager who was adjusting time clock hours to reduce payroll which Plaintiff caught him doing and reported it to Corporate.

Defendants claim Plaintiff is a Libel-Proof Plaintiff fails. Even under the defendants own paraphrased statements of plaintiff.

As to Defendants argument **b. Defendants' statements were true.** While defendants might like to say their statement were or are true the fact is they are not. Interestingly defendants claimed in their own statements to plaintiff they publish what they found on the internet and even published statements they only published what Politico & DailyMail published 15 years earlier, they chose to reference a Pueblo Chieftain article Which defendants assert "*Further, the ongoing "harassment" and republication of "libellous claims" to which Plaintiff referred in his complaint4 includes a newspaper report that Plaintiff has three recorded arrests in Colorado in the 1980s for charges including credit card fraud and forgery, a history of multiple disciplinary infractions while serving a 16-year prison sentence, and additional arrests in 2007 and 2008 in other states.*" **Dkt 21 Page 13 line 9-14** . Plaintiff has found no record in plaintiffs complaint referencing the newspaper article defendants have inserted in their motion as an effort to submit evidence not in record but will address it anyway.

It should be noted that using an article which the publisher of said article was also noticed of its false defamatory statements and asked to retract and who are also in process of being sued for libel isn't exactly proof defendants statements were/are true. In fact neither the publisher of the article defendants linked to, nor defendants can produce a single record of Plaintiff being arrested for or charged with credit card fraud and would be strongly encouraged to verify the truthfulness of any document they plan to submit in reply to this response.

Defendants argument *"Plaintiff Sinclair was previously sued over his allegations that the failed polygraph tests were rigged in exchange for $750,000. Parisi v. Sinclair, 845 F.Supp. 2d 215, 218 (D.D.C. 2012). 2d 215, 218 (D.D.C. 2012). While the case against Mr.*

*Sinclair was dismissed for failure to state a claim, his allegations of "rigging" confirm that Plaintiff's polygraph examination indicated deception. Sinclair, 845 F.Supp. 2d at 217.5"* (**Dkt 22 Page 13 lines 19-20 Page 14 Lines 1-3)** is a stretch beyond belief. First if defendants were being honest they would find the allegation was that a book plaintiff published in 2009 where plaintiff included information on an tip received alleging the polygraph was rigged in exchange for payment was false. If defendants had researched a little further in that case they would have found not only was it demonstrated the tip was in fact received, from the very phone numbers published as the tip coming from, and after plaintiffs in that case deciding not to pursue that individual after being challenged to it only proves Plaintiff was actually telling the truth about a tip. Furthermore defendants failed to mention in their motion that the US District Court Judge R.J. Leon issued a Memorandum in that case pointing out that Plaintiff Sinclair did not act recklessly in reporting the tip but had in fact engaged in due diligence to verify the information, even passed the information on to a Chicago Tribune reporter who also spoke with the tipster who confirmed to Crewdson exactly what was related to Sinclair. In other words Plaintiff took the time, made the effort and engaged in the proper process for verifying information and its validity and truthfulness before he chose to publish it in his book, the very thing defendants not only should have done but as "alleged" journalists should have done before the published false statements they took off the internet from 15 years earlier even more so because a lot can be uncovered in 15 years, which was.

It should also be noted the very case Parisi v Sinclair defendants claim somehow means plaintiff admitted polygraph indicated deception is the case where the truth about the polygraph results published in 2008 were in fact false and proved Plaintiff Sinclair was

truthful on both exams. Plaintiff referred defendants to the case and the video which it is clear they chose to ignore it.

To be clear Plaintiff has always said he passed the 2008 polygraph exams, only noted Ed Gelb's attempt to cut off complete circulation with blood pressure cup in an effort to get a different result and has always said Gelb's report was false and in 2011 discovered his position to in fact be correct.

As to defendants **2. Defendants did not act with malice or negligence regarding the truth of their statements about Plaintiff** argument this too must fail. The fact defendants admit to simply publishing statements published on the internet amounts to negligence in and of itself. The fact that defendants after being advised their statements were false and given access to means demonstrating them to be false and defendants choosing to continue to publish them repeatedly even up to this day demonstrates malice and malicious intent. To claim otherwise is simply fairytale speak. Defendants continue acting with malicious intent as demonstrated by defendant Brian Krassensteins publication on February first before Defendants filed a reply accusing plaintiff of perjury (Dkt 25)



As to defendants **a. Plaintiff's complaint establishes that Plaintiff was a limited purpose public figure** argument plaintiff disagrees. First defendants want to claim plaintiff received widespread media attention and coverage in 2008 regarding a YouTube video making a statement regarding the claims by then Democratic candidate Barck Obama. That claim is blatantly false and defendants themselves have acknowledge plaintiff was completely ignore by media as do every other recent article defendants point to.

Plaintiff has not engaged in social media other than minimally at best except personal Facebook post or matters covering immigration for years. Plaintiff had never communicated with, known about or even read anything published by defendants before defendants began their libelous and defamatory attacks on X where both defendants operate in a tag team fashion posting and reposting each other to increase impressions for financial gain. Defendants claim that Pueblo Chieftain article content was part of defendants publish comments is false and was only incorporated in defendants published post after this case was filed to attempt to provide them legal cover. Doesn't really matter because neither have produced a single shred of documentation to back up their claims.

Plaintiff was contacted by Tucker Carlson to do an interview on media bias and he pointed out in a Aug 30, 2023 interview with Adam Carolla the transcript is available on the video around the 11:16 mark. https://youtu.be/q89Rzl9J5v4?si=sEBaO-oZ5fyAYmGB

Defendants claim that by doing the interview with Tucker Carlson created a public controversy which was 15 years old was not highly publicized by plaintiff as claimed and which was not widely reported by any media or access to media. The 2008 Press Club press conference was to address the massive amount of false claims being circulated on the internet by bloggers hiding behind screen names and the fact that Politico's 15 year old

article sources were same said bloggers clearly should have caused people to act with care when republishing statements as fact from it.

As for any media reports resulting from the 2023 Tucker Carlson interview they are directed at attacking Carlson and in doing so republishing libelous false statements about Plaintiff. Defendants even had their first publications to the interview prewritten and scheduled to post at the exact time the interview was set to air.

The published comments by defendants were not a public discourse on 15 yr old statements by plaintiff regarding candidate Obama they were repeated false defamatory libelous claims published to attack plaintiff not engage in a discussion over the actual allegation. Defendants also fail in claiming a matter which had far since seen its outcome and the current matter having no effect much less a substantial effect on the public also makes claim plaintiff is limited purpose or any other type of public figure.

Furthermore the decision as to whether a Plaintiff is a Public figure is for the court to make, not the defendants.

As to Defendants **c. Defendants did not act negligently regarding the truth of the Statements** and their argument that that plaintiffs own admission his criminal history is from 1980-1986 somehow makes defendants published statements plaintiff has a 27 year criminal history with multiple convictions for fraud to somehow be true is ludicrous at best. To further argue that a newspaper article stating plaintiff had arrests for charges for credit card fraud with not documentation supporting that claim is also ludicrous and under Texas Law, the truth is not always an absolute defense against defamation claims. In some cases, a true statement can still be considered defamatory if it is made with actual malice.

Claiming that arrest in 2007 and 2008 demonstrate plaintiffs 27 year criminal history is not only malicious its made to imply plaintiff engaged in criminal acts which if defendants

bothered to research they would have discovered 1. 2007 was a disorderly conduct the equivalent of a traffic ticket not a crime, and 2008 the charge was dismissed after plaintiff demonstrate the Attorney General for Delaware withheld evidence from a Grand Jury proving that the crime alleged never actually took place in the first place. But to be honest about that would not fit the defendants intent to defame and libel plaintiff.

Plaintiff has repeatedly advised people to be careful what they publish they claim they obtained from public records. As plaintiff has proven over research conducted over the past 15 plus years not everything one finds on an official public record is accurate and most agencies advise those seeking records to be aware sometimes there will be incomplete or inaccurate information released. It should also be noted under Texas Law publishing a statement that intentionally omits important information of the statement to imply a false narrative even it the partial statement may hold truthfulness in part is defamation under law. *Outlet Co. v. Intern. Sec. Group, 693 SW 2d 621 - Tex: Court of Appeals, 4th Dist. 1985*

Clearly defendants own actions and continued actions even since the filing of this cause demonstrate both negligence and malice.

Tortious Interference can be demonstrated at trial that defendants defamatory and libelous statements caused plaintiff to lose tentative agreed upon funding in a film production deal that had been in negotiations for more than two years. In addition to interfering with plaintiffs medical expense fund raising effort which had started before the interview was even recorded.

Defendants Brian and Edward Krassenstein clearly engaged in conspiracy to target plaintiff and acted in that conspiracy in their tag team approach of publishing their defamatory and libelous statements against plaintiff.

**Texas Law Defines Each Individual Publication a Separate Defamation and Libel Count and Separate Injury.**

Thanks to defendants counsel plaintiff has become aware that under Texas Law each individual publication of defamation/libel constitutes a separate count and injury. Given that defendants have (despite being notified of their obligation under law to preserve evidence) deleted a lot of their published statements after realizing plaintiff was in fact filing legal action it may take a Court Order directing X Corporation to turn over all defendants published statements and comments including those they have deleted from August 30, 2023 to date, Plaintiff seeks the right to Amend Complaint to include each individual act of defamatory libelous publication by defendants and will be more than willing to provide defendants detailed allegations and facts demonstrating each are indeed libelous, published with both negligence and malice as well as demonstrate losses as a result.

Plaintiff will also give defendants the opportunity to decide if they would rather proceed on the current counts as to the defamation and libel or have plaintiff amend the complaint to list each and every publication of libel instead.

**Wherefore** Plaintiff respectfully asks the Court to **DENY** Defendants Motion to Dismiss pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure (Dkt 21) or in the alternative Grant Plaintiff Leave to Amend Complaint to list each individual publication of libel by defendants in accordance with Texas Law.

**As to Defendants Alternative Motion to Transfer Venue Pursuant 28 U.S.C. § 1404(a)**

In regard to defendants Alternative Motion for Transfer of Venue to the Middle District of Florida. 28 USC §1404 was enacted in 1948 and amended shortly thereafter to include subsection (a) Shortly thereafter, ***Congress enacted 28 U.S.C. § 1404(a) revising***

*the Judicial Code, 28 U.S.C. § 1 et seq. See 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."*

Defendants claim the action lacks Diversity yet that is clearly false; defendants claim the Court lacks Subject Matter Jurisdiction which is also false. Upon research plaintiff discovered that Motions pursuant to 28 U.S.C. § 1404(a) are normally considered inappropriate with motions to dismiss under Rule 12 (b). For defendants Motion to Transfer Venue to be proper or valid defendants would have to hold position that Diversity and Jurisdiction are proper and valid.

The applicable Fifth Circuit law allows for transfer only when the movant shows that the transferee forum is "clearly more convenient" than the transferor forum, which is determined by assessing a series of private and public interest factors. *In Re: TikTok, Inc., No. 23-50575 (5th Cir. 2023)* **In re Samsung Elecs. Co., Ltd., Case No. 2023-146 (Fed. Cir. Dec. 14, 2023**)

Defendants simply state in their Alternative Motion to Transfer Venue is for *the convenience of parties and witnesses (emphasis bold added).* Stating simply that defendants reside in Ft Meyers & Cape Coral, Florida though none of defendants reside in Cape Coral and plaintiff corrected defendant Edward Krassensteins address after defendants refused repeated requests to confirm his correct address and plaintiff discovered his correct address in Ft. Meyers. The business defendants do not operate outside of the address and residence of defendants Krassensteins according to Florida Division of Corporation filings. Defendants in reply (Dkt 25 Section III) to plaintiffs Response

to Rule 12(b)(1) Motion (Dkt 22) Defendants seek transfer of venue solely because the requested District is a few miles from defendants' home.

*"Finally, Defendants assure this Court that they do not believe the court is "a little slow," as Plaintiff asserts. Doc. No. 22 at 6. Defendants assert that if this Court does not dismiss this case, then venue is proper in the United States Court for the Middle District of Florida, Fort Myers Division, for the very reason that Plaintiff mentioned in his reply: it is a few miles from their home. Doc. No. 22 at 6-7".* **(Dkt 25 Section III)**

As to defendants misrepresentation as to plaintiffs being comfortable in Florida Courts when he wants to is another deliberate attempt along with defendants recent effort to claim Mr. Gamez affidavit is perjured using Motion for Restraining Order response (Dkt 34) to assert Defendants contacting and harassing & threatening Mr. Gamez 10 minutes after affidavit was filed and defendant read it was proof Mr. Gamez was lying where he stated no has contacted him or asked him anything about my staying in his properties. The Florida cases defendants refer to were filed when I resided in Florida by counsel who suddenly retired from practicing law and plaintiff was stuck with taking the case pro se.

Defendants promote themselves as Social Media Influencers, Social Media Celebrities, Political Journalists, Reporters, Website Portal designers, Internet advertisers, and operate all their "claimed" businesses online and receive financial benefit and revenue from the State of Texas residents as well as ad revenue from ads targeting Texas residents or originating in Texas which appear along their X posts.

Twitter personalities who say they're getting thousands of dollars under the site's new ad-revenue program.

https://www.businessinsider.com/twitter-ad-revenue-scheme-creator-influencer-personalities-elon-musk-money-2023-7?amp

https://muckrack.com/eddie-krassenstein

https://muckrack.com/eddie-krassenstein/articles

The Krassensteins

https://www.reddit.com/r/moderatepolitics/comments/g6bm0p/the_krassensteins/

Avenatti, Wohl and the Krassensteins Prove Political Media Is a Hucksters' Paradise

https://www.rollingstone.com/politics/politics-news/avenatti-wohl-krassensteins-prove-political-media-is-hucksters-paradise-839032/amp/

Twitter Starts Paying Some Creators Share of Ad Revenue on Invitation-Only Basis, Including Andrew Tate and Krassenstein Brothers

https://variety.com/2023/digital/news/twitter-paying-creators-ad-revenue-share-andrew-tate-krassensteins-1235670342/amp/

Watch "Meet The Krassensteins, The Superstar BrosOf #Resistance Twitter(HBO)"on YouTube https://youtu.be/Np-FxttU80Y?si=rssvSY2amc8tLswV

Watch "Brian and Ed Krassenstein | PBD Podcast | Ep. 299" on YouTube

https://www.youtube.com/live/GXmfIf1jp9g?si=9UMhaSjxqh2lyEKj

America's Most Infamous Resistance Bros Want Back In

https://www.thedailybeast.com/the-krassenstein-brothers-americas-most-infamous-resistance-bros-want-back-in

Stars of the #Resistance movement, the Krassenstein brothers are back and pushing NFTs— despite past allegations of fraud.

https://www.rollingstone.com/culture/culture-news/krassenstein-brothers-twitter-elon-musk-1234646852/amp/

Brian Krassenstein https://www.influencewatch.org/person/brian-krassenstein/

Twitter Permanently Bans Anti-Trump Krassenstein Brothers, Who Deny They Broke Platform's Rules

https://variety.com/2019/digital/news/twitter-bans-ed-brian-krassenstein-brothers-fake-accounts-1203225266/amp/

The puzzling prominence of the Twitter-famous Krassenstein brothers

https://archive.thinkprogress.org/who-are-the-krassenstein-brothers-251f68acf674/

Twin brothers Brian and Ed Krassenstein have a news website in which they describe themselves as "Democrats fighting for a fascist-free United States."

https://www.politifact.com/personalities/brian-krassenstein/

Feds Seized a Fortune From #Resistance Icons Accused of Boosting Online 'Ponzi Schemes'

https://www.thedailybeast.com/feds-seized-a-fortune-from-resistance-icons-accused-of-boosting-online-ponzi-schemes

Did the Krassenstein bros exploit the Haitian disaster to get more followers online?

https://www.dailydot.com/irl/krassenstein-haitian-disaster-facebook-groups-followers/

Krassenstein Brothers: 5 Fast Facts You Need to Know

https://heavy.com/news/2019/05/krassenstein-brothers-ed-brian/amp/

Defendants directly seek subscribers, followers and viewers of their posts and published content specifically for the purpose of financial gain. The more outrageous, controversial and vicious the posts and comments the higher volume of traffic and impressions on them.

Defendants cannot present or identify a single witness they intend to call in Florida that could possibly even be admitted testifying. The evidence in this case is electronically stored and despite defendants recent clean up efforts to delete evidence of their deliberate

and malicious publishing of false statements in defamation and libel of plaintiff, plaintiff can state for the court evidence he will seek either with defendants cooperation authorizing X Corp to turn it over or by Court subpoena will be from X Corp which is located in California. Discovery intended to be sought from defendants clearly is located within defendants' homes so they should have no problem producing it and turning it over.

Defendants own published admissions state "we only published what was on the internet and published by Politico and the Daily Mail 15 years ago," which despite being false Politic nor the Daily Mail are located in Florida nor is it believed defendants would get anyone from either of those operations to testify at trial.

Defendants were repeatedly requested if they would comply with "their duty" under *FRCP Rule 4 (d) WAIVING SERVICE. (1) Requesting a Waiver. An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h)* **has a duty to avoid unnecessary expenses of serving the summons**. *The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons.* And publicly published their refusal to do so before deleting it in effort to avoid it being filed with the Court See Dkt 11 Plaintiffs Motion for US Marshall Service at the same time defendants were publicly posting and engaging with their followers on how to challenge process and other strategy. Yet now defendants claim convenience.

Defendants Alternative Motion to Transfer Venue is not because the requested District is proper as claimed, it is another strategy publicly discussed and mentioned as a way to force plaintiff to have to drop the action due to lack of finances of plaintiff. Defendants have publicly stated their disappointment with this Court allowing plaintiff to bring this action without prepayment of filing fees. Defendants have repeatedly publicly

stated "when the Court lets someone with no money file without paying fees any body can sue anybody."

Defendants are in their attempt to transfer venue themselves "Forum shopping" because they want Florida Law to be controlling as opposed to Texas.

Plaintiff can state here and now if his suspicions as to the interactions and associations between defendants and defendants counsel of record are correct, given that defendants counsel is at the very least a Follower of defendants accounts and despite requests for counsel to respond to plaintiffs questions about counsels engagement with defendants postings he has chosen not to, plaintiff may move to call defendants counsel as a witness in this matter.

Defendants have used information they obtained from the internet and presented it to this court as factual and even have entered it into evidence in their motions without once asking plaintiff directly, like plaintiff did defendants, for plaintiffs' address or anything else. Defendants have submitted information they never bothered to verify, never sought to verify the veracity of the original authors or any other effort which would allow them to present it to this court as evidence or factual.

Defendants hold the burden to demonstrate a transfer of venue is indeed in the interest of justice, and not only have they not done that, but they also cannot do so. Seeking venue transfer as a strategy to force plaintiff to drop the action is not a factor set forth by the United States Court of Appeals for the Fifth Circuit.

Defendants have not provided anything in their motion for transfer of venue which would find a single factor weighing in their favor. Plaintiff would argue that Defendants Motions to Dismiss (Dkt 21) which the attached the Alternative Motion for Transfer of Venue Pursuant to 28 U.S.C. § 1404(a) are more their roll of the dice hoping to misrepresent the

facts just enough to squeeze out a dismissal knowing that Diversity & Subject Matter and Personal Jurisdiction is proper in this Court. Otherwise, why seek the Alternative instead of waiting for ruling on motions to dismiss first?

Regardless of why defendants chose this route they have FAILED to meet even the bare minimum burden established by the Fifth Circuit to succeed on Transfer of Venue in this matter.

**Wherefore** Plaintiff respectfully asks the Court to **DENY** Defendants Alternative Motion to Transfer venue pursuant to 28 U.S.C. § 1404(a) and further

**Wherefore** Plaintiff respectfully asks the Court to **DENY** Defendants Motion to Dismiss pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure (Dkt 21) or in the alternative Grant Plaintiff Leave to Amend Complaint to list each individual publication of libel by defendants in accordance with Texas Law.

Submitted this 2nd day of March 2024

Respectfully Submitted

*Lawrence Sinclair*

Lawrence (Larry) W. Sinclair
Plaintiff, Pro Se
1520 Sherman Street
Laredo, Texas 78040
602-583-3626
Email: lsnewsgroup@gmail.com

## **CERTIFICATE OF SERVICE**

I Lawrence (Larry) W. Sinclair  HEREBY certify that a true and correct copy of the foregoing **PLAINTIFFS RESPONSE TO DEFENDANTS MOTION TO DISMISS PURSUANT TO FRCP 12 (b) (6) and ALTERNATIVE MOTION TO TRANSFER VENUE (Dkt 21)** has been furnished electronically by email through ECF-CM system to Charles A. Bennett cbennett@bennettlegal.com Counsel for Defendants this 2nd day of March, 2024.

*Lawrence Sinclair*

Lawrence (Larry) W. Sinclair
Plaintiff, Pro Se
1520 Sherman Street
Laredo, Texas 78040
602-583-3626
Email: lsnewsgroup@gmail.com