United States District Court
Southern District of Texas
**ENTERED**
August 20, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| LAWRENCE SINCLAIR | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:23-CV-109 |
| | § | |
| BRIAN KRASSENSTEIN, *et al.* | § | |

# ORDER

In this case, Plaintiff Lawrence Sinclair has sued Defendants Brian Krassenstein, Edward Krassenstein, E&B Advertising, Inc., and Forum Advertising LLC, for injuries arising out Defendants' alleged defamation of Plaintiff (Dkt. No. 5). Defendants have filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 21). The Court has carefully reviewed the parties' arguments, the record, and applicable authorities, and hereby **GRANTS** the motion to dismiss (Dkt. No. 21).

## I. BACKGROUND

This is a defamation action. In 2008, Plaintiff, Lawrence Sinclair, publicly alleged that he had previously had a cocaine-and-sex-laden encounter with then-presidential candidate Barack Obama (Dkt. Nos. 5 at 3; 21 at 11). Mr. Sinclair's statements drew a maelstrom of media attention (Dkt. No. 21 at 11). In response to Mr. Sinclair's claims, Daniel Parisi, the owner of a political blog, Whitehouse.com, challenged Mr. Sinclair to take a polygraph test. *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 217–18 (D.D.C. 2012). The results of this test reportedly indicated that Sinclair was deceptive in his responses, which he disputes (Dkt. Nos. 21-1 at 4; 45 at 7). Mr.

Sinclair's 2008 allegations and the subsequent media coverage form the heart of this dispute.

In September 2023, these allegations returned to the spotlight when Mr. Sinclair discussed them on The Tucker Carlson Encounter, a news streaming platform (Dkt. No. 5 at 3). Clips from this interview were widely disseminated on X, formerly known as Twitter (*id.* at 4). Following the interview, Defendants Brian and Edward Krassenstein, who are online journalists, discussed Sinclair's interview on X (*id.* at 4–5). Mr. Sinclair alleges that Defendants distribute content designed to direct certain "political or social narratives" on behalf of their clients (Dkt. No. 5 at 6). Here, Defendants made several statements about Mr. Sinclair, including that he had a 27-year criminal history with fraud convictions, had failed two polygraph tests, and had a history of making false statements (Dkt. Nos. 5 at 7; 21 at 9). Mr. Sinclair avers that he then contacted Defendants to provide evidence that their claims were incorrect and requested that they retract their allegedly libelous statements (*see* Dkt. No. 5 at 5; Dkt. No. 21-1 at 9). However, Defendants "simply ignore[d]" these requests (Dkt. No. 5 at 5).

As a result of the Defendants' statements, Mr. Sinclair, proceeding in *forma pauperis* (Dkt. Nos. 2, 4), sued them for libel, false light invasion of privacy, tortious interference, and civil conspiracy (*see* Dkt. No. 5 at 7–10). Mr. Sinclair claims that he has suffered significant damages due to the Defendants' actions, including loss of reputation, extreme emotional distress, interference with obtaining necessary medical treatment, physical injury, obloquy, and loss of opportunities, amounting to

damages in excess of $15 million (*id.* at 8). Mr. Sinclair also seeks punitive and exemplary damages, alleging they acted with intentional malice (*id.* at 9).

## II. LEGAL STANDARDS

### A. Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss, a complaint must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the alleged facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the court must accept the complaint's well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." *Twombly*, 550 U.S. at 556.

### B. *Pro Se* Plaintiffs & Leave to Amend

Federal Rule of Civil Procedure 15 allows pleadings to be amended once as a matter of course, before a responsive pleading is served. Any amendments thereafter must be by leave of Court. Fed. R. Civ. P. 15(a). The rule provides that "[t]he court should freely give leave when justice so requires." *Id.* Leave to amend the pleadings should be denied only when there is a "substantial reason" to do so. *Jacobsen v.*

3

*Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998) (citation omitted). There is substantial reason to deny leave if the proposed amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted." *Miller v. United States Gov't*, No. 3:22-CV-2694-M-BH, 2023 WL 5281045, at *4 (N.D. Tex. Aug. 4, 2023), *report and recommendation adopted*, No. 3:22-CV-2694-M-BH, 2023 WL 5282440 (N.D. Tex. Aug. 15, 2023) (citing *Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001)). "Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed by court order." *Id.* (citations omitted). If a court "outline[s] in [its] opinion the deficiencies" of a complaint and the "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard], the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims*, 2001 WL 627600, at *2–3 (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988) (slip op.)).

## III. DISCUSSION

### A. Libel

Under Texas law, defamation is defined as "a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing

4

*Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)). "A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury." *Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex. App. 2006) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 2005)). Libel is actionable *per se* when written or printed words are so obviously harmful that they require no proof of their injurious character. *Id.* (citing *Knox v. Taylor*, 992 S.W.2d 40, 50 (Tex. App.—Houston [14th Dist.] 1999, no pet.)).

      1.  *Whether Mr. Sinclair Is a Public or Private Figure*

For a defamation claim, a plaintiff must allege facts showing that the defendant published a defamatory statement concerning the plaintiff while acting (i) with negligence if the plaintiff is a private individual, or (ii) actual malice regarding the truth of the statement if the plaintiff is a public figure. *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 562 (S.D. Tex. 2022), *appeal dismissed*, No. 22-20455, 2022 WL 18912180 (5th Cir. Sept. 27, 2022) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). Under Texas law, there are two types of public figures: (1) "general-purpose" public figures who "achieve such pervasive fame or notoriety that they become public figures for all purposes and in all contexts;" and (2) "limited-purpose" public figures who "thrust themselves to the forefront of

particular public controversies in order to influence the resolution of the issues involved." *Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2015 WL 390664, at *11 (N.D. Tex. Jan. 29, 2015) (citing *Klentzman v. Brady,* 312 S.W.3d 886, 904–05 (Tex. App. 2009, no pet.) (cleaned up)).

"To determine whether a person is a limited-purpose public figure, Texas courts apply a three-part test: (1) the controversy at issue must be public both in the sense that people are discussing it and in the sense that people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy." *Charalambopoulos*, 2015 WL 390664, at *11 (quoting *McLemore,* 978 S.W.2d at 571). For a public figure to prove that the defendant made a statement with actual malice, he must show the defendant knew the statement was false or acted with reckless disregard for its truth. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000). "A publisher's presentation of facts may be misleading, even negligently so, but is not a 'calculated falsehood' unless the publisher knows or strongly suspects that it is misleading." *Id.*

Here, the Court will treat Mr. Sinclair as a limited-purpose public figure for the following reasons: (1) Mr. Sinclair voluntarily appeared on a widely-viewed program to discuss his claims about President Obama, which received widespread media attention in 2008, and the controversy at issue pertains to those same allegations; (2) Mr. Sinclair's role was central to the controversy; and (3) the alleged

6

defamation flows from media defendants discussing Mr. Sinclair's public appearance. *See McLemore,* 978 S.W.2d at 571; *Immanuel,* 618 F. Supp. 3d at 566 ("Because [the plaintiff] chose to participate in activities that were bound to invite attention and comment, she is a limited purpose public figure.") (citation omitted). Therefore, to succeed on his libel claim, Mr. Sinclair must show that Defendants acted with actual malice in making the statements at issue. *See Turner*, 38 S.W.3d at 119–20.

To be sure, as a *pro se* plaintiff, Mr. Sinclair's claims must be construed liberally. *Hulsey v. Texas,* 929 F.2d 168, 170–71 (5th Cir. 1991) (discussing leniency to be shown towards *pro se* litigants). But even when viewed with appropriate deference, Mr. Sinclair's libel claim is legally insufficient. The Court will address each group of allegedly defamatory statements in turn.

i. <u>Mr. Sinclair is a convicted fraudster.</u>

Mr. Sinclair argues that Defendants falsely labeled him as a "convicted fraudster" because his criminal history does not include any charges or convictions for fraud (Dkt. No. 43 at 9–10). However, Mr. Sinclair was convicted of felony forgery in 1986, which is legally considered a form of fraud under Texas law.[1] Specifically, the Texas forgery statute falls under Chapter 32 of the Texas Penal Code, which is titled "Fraud." As Texas courts have established, "[t]ruth or substantial truth is a complete defense to a defamation claim." *Williams v. Cordillera Commc'ns, Inc.*, 26 F. Supp. 3d 624, 630 (S.D. Tex. 2014) (citing *Grotti v. Belo Corp.*, 188 S.W.3d 768, 775

---

[1] Mr. Sinclair was convicted of forgery in Florida, which also considers forgery to be a form of fraud. *Padilla v. Padilla*, 278 So. 3d 333, 335 (Fla. Dist. Ct. App. 2019) ("Forgery is, indeed, a species of fraud."). Thus, the Court would reach the same conclusion if it applied Florida state law.

7

(Tex. App.—Fort Worth 2006, pet. denied)). Therefore, Defendants' use of the term "fraudster" is not defamatory, as it falls within the scope of permissible media commentary, which can be sharp without veering into defamation. *See Immanuel*, 618 F. Supp. 3d at 565.

        ii.      <u>Mr. Sinclair has a 27-year criminal history.</u>

Mr. Sinclair contends that his criminal history consists of only five cases between 1980 and 1986 (Dkt. Nos. 43 at 10; 43-1 at 7–8). However, Defendants respond that there are other media reports[2] "about which Plaintiff expressed concern in his complaint" which show that he has additional recorded arrests in Colorado in the 1980s for various charges including credit card fraud and forgery, as well as more recent charges from 2007 and 2008 (Dkt. Nos. 21 at 18; 21-1 at 4).[3] Even if these more

---

[2] The Court notes that the article attached to Defendants' motion to dismiss is dated for September 8, 2023, two days after Defendant Brian Krassenstein first alleged on X that Mr. Sinclair had a 27-year criminal history (Dkt. No. 21-1 at 2). However, Mr. Sinclair and Defendants agree that there was significant media coverage regarding Mr. Sinclair's allegations and criminal history, both in 2008 and surrounding Mr. Sinclair's interview with Tucker Carlson (Dkt. Nos. 5 at 4–6; 21 at 8–9).

[3] When reviewing a motion to dismiss, courts generally rely on the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). However, Rule 12(b) allows courts to consider "matters outside the pleadings" at their discretion, though it does not require this. *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 578 (N.D. Tex. 2005). It is only when courts consider matters which are "*neither* referenced in the complaint *nor* matters of public record that may be judicially noticed" that, as provided by Rule 12(d), the motion must be converted into a motion for summary judgment and the court must provide the parties with "notice of the conversion and a reasonable opportunity to present all pertinent evidence." *Id.* By contrast, if a court takes account of matters referenced in the complaint or of public record, the 12(b)(6) motion "remains intact." *Id.*

    The court may take judicial notice of newspaper and magazine articles and consider exhibits central to the claims if referenced in the complaint. *See generally Terrell v. Town of Woodworth*, No. 1:21-CV-04224, 2023 WL 4115769, at *3 n.3 (W.D. La. June 7, 2023), *report and recommendation adopted*, No. 1:21-CV-04224, 2023 WL 4115879 (W.D. La. June 21, 2023), *aff'd*, No. 23-30510, 2024 WL 667690 (5th Cir. Feb. 19, 2024) (citation omitted); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

    Here, Mr. Sinclair disputes Defendants' assertion that he has a 27-year criminal history, broadly alleging that Defendants relied on "other people's libel" (Dkt. No. 5 at 4–5). Therefore, the article about Mr. Sinclair's criminal history from 2007 and 2008, which Defendants attached to their motion to dismiss (Dkt. No. 21-1 at 2–5), and Mr. Sinclair's criminal records, which he provided in response to the motion, (Dkt. No. Dkt. No. 43 at 9–10) are central to Mr. Sinclair's defamation claim and incorporated into Plaintiff's amended complaint by reference. *See Malone v. WP Co., LLC*, No.

recent charges were improperly attributed to him, as Mr. Sinclair seems to suggest, that would be negligent conduct absent any particularized allegation that Defendants "kn[ew] or strongly suspect[ed]" this impropriety. *See Turner*, 38 S.W.3d at 120. Further, Mr. Sinclair's claim that Defendants' statement may be politically motivated does not help him make this showing either. *See Dolcefino v. Turner*, 987 S.W.2d 100, 119 (Tex. App. 1998), *aff'd sub nom. Turner*, 38 S.W.3d 103 ("Political motivation does not equate with knowing or reckless falsity.").

### iii. Mr. Sinclair has failed two polygraph tests.

Mr. Sinclair alleges he never failed any polygraph tests, and he informed Defendants that the polygraph results they referenced were fabricated (Dkt. No. 43 at 10). Specifically, he emailed Defendants that "the truth about the Polygraph test having actually been PASSED not failed has been publicly available since 2011" as part of a "federal court case" (Dkt. No. 21-1 at 9).[4] Defendants counter by citing the lawsuit Mr. Sinclair appears to reference, *Parisi v. Sinclair*, which they allege confirms the polygraph results (Dkt. Nos. 21 at 17; 45 at 8–14). *See* 845 F. Supp. 2d 215 (D.D.C. 2012). The court in *Parisi* noted that the examiner's report indicated deception by the plaintiff, and the findings were corroborated by two other examiners.

---

3:22-CV-00046, 2023 WL 6447311, at *1 n.2 (W.D. Va. Sept. 29, 2023) (citing *Collins*, 224 F.3d at 498) (incorporating news article attached to defendant's motion to dismiss into plaintiff's complaint by reference); *see also Terrell*, 2023 WL 4115769, at *3 n.3 (incorporating news articles into complaint by reference because they were central to plaintiff's civil rights claim).

[4] In his amended complaint, Mr. Sinclair alleges that he "immediately responded to both defendants informing them their posts were libelous" (Dkt. No. 5 at 5). He further claims that he gave Defendants "multiple opportunities to retract their repeated libel and false claims . . . and resolve this issue without having to engage in litigation," which Defendants ignored (*id.* at 5–6). Thus, this email, as it relates to Defendants' subsequent refusal to comply with Mr. Sinclair's requests, is central to his defamation argument and incorporated into his amended complaint by reference. *See Delhomme,* 232 F.R.D. at 578.

9

*Id.* at 218. Even if Mr. Sinclair personally disputes the accuracy of the polygraph results, this does not impute actual malice to the Defendants' part, especially given that *Parisi* states as a matter of public record that the polygraph test indicated deception. Further, Mr. Sinclair's email to Defendants regarding the alleged falsity of their tweets does not mean Defendants' statements were made with actual malice. *See Howell v. Hecht,* 821 S.W.2d 627, 631 (Tex. App.—Dallas 1991, writ denied) (holding that there was no evidence of actual malice when story was republished after plaintiff denied its accuracy but failed to "state with specificity any facts" that would have alerted defendant to the falsity of the statements made). Mr. Sinclair's mere allegations that Defendants' statements were incorrect or defamatory are not specific facts that would have alerted Defendants as to the falsity of their statements. *See id.*

## B. False Light Invasion/Misappropriation of Privacy

Mr. Sinclair alleges that Defendants made "defamatory libelous statements" that placed him in a false light, which would be highly offensive to a reasonable person, and further contends that the defendants "misappropriated" his right to privacy (Dkt. No. 5 at 9). However, these claims are not supported by Texas law or his pleadings.

Texas law does not recognize claims for false-light invasion of privacy based on the publication of false statements about a plaintiff. *See Johnson v. Bearfoot Cos., LLC*, No. 02-23-00366-CV, 2024 WL 2202033, at *6 (Tex. App.—Fort Worth May 16, 2024) (citing *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994)), Therefore, Mr. Sinclair's claim for false-light invasion of privacy cannot proceed.

Regarding the misappropriation claim, Texas law requires a plaintiff to establish the following elements: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.). Here, Mr. Sinclair has not alleged these elements (*see* Dkt. No. 5 at 9). As established, journalists may report on a public-facing controversy. Without more specific allegations, Mr. Sinclair has not sufficiently alleged misappropriation of his right to privacy at this juncture. Accordingly, this claim fails.

### C. Tortious Interference

Under Texas law, to establish tortious interference with an existing contract, a plaintiff must demonstrate: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Likewise, a claim for tortious interference with a prospective business relationship requires showing: "(1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's

11

interference." *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001).

Here, Mr. Sinclair has not satisfied the elements required for either claim. His amended complaint alleges interference with a GoFundMe campaign he established to raise medical funds, but he has not alleged that there was an existing contract in place or what negative impacts, if any, his campaign suffered (Dkt. No. 5 at 10). Additionally, Mr. Sinclair's response to the motion to dismiss vaguely asserts that Defendants' statements caused him to lose tentative funding for a film production deal, but this assertion is vague and not properly before the Court (Dkt. No. 43 at 20). *See J.T. v. Uplift Educ.,* No. 3:20-CV-3443-D, 2021 WL 2110897, at *2 (N.D. Tex. May 25, 2021) ("When ruling on a motion to dismiss, the court does not consider additional facts that are alleged in a response brief but not in the complaint."). As such, his tortious interference claim, as stated in the amended complaint (Dkt. No. 5 at 9–10), is insufficiently alleged and subject to dismissal.

### D. Civil Conspiracy

Under Texas law, to establish a claim for civil conspiracy, a plaintiff must demonstrate: "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (citation omitted). It is well-established that a conspiracy claim is a

derivative tort, meaning that recovery is based not on the conspiracy itself, but on an underlying tort. *Mignogna v. Funimation Prods., LLC*, No. 02-19-00394-CV, 2022 WL 3486234, at *15 (Tex. App.—Fort Worth Aug. 18, 2022), *reh'g denied* (Sept. 29, 2022), *review denied* (Dec. 30, 2022) (citing *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019)).

Here, Mr. Sinclair alleges that Defendants "combined and conspired for an unlawful purpose, *i.e.*, defamation, libel, and tortious interference," and asserts that they engaged in one or more overt acts in furtherance of this conspiracy (Dkt. No. 5 at 10). But, as discussed, Mr. Sinclair's underlying allegations are threadbare and legally insufficient. Because Mr. Sinclair has not sufficiently alleged any underlying claims, this derivative conspiracy claim necessarily fails.

## IV.  CONCLUSION

Defendants' motion to dismiss is hereby **GRANTED**. However, because Mr. Sinclair is proceeding *pro se* and has requested leave to amend (Dkt. No. 45 at 18), the Court will **GRANT** his request in accordance with this circuit's precedent. *See Sims*, 2001 WL 627600, at *2. Mr. Sinclair is permitted to file a second amended complaint **within 30 days** of this order; should he fail to amend, or amend and nonetheless fail to state a claim, this action will be subject to dismissal without further opportunity to amend. The Court strongly admonishes Mr. Sinclair against flooding the docket with supplemental filings and "corrected replies" without leave, as he has previously done (*see e.g.,* Dkt. Nos. 26, 27, 32, 37, 45). Should he continue

to engage in this practice, any supplemental filings made without leave will be **STRICKEN.**

It is so **ORDERED**.

**SIGNED** August 20, 2024.

                                              Marina Garcia Marmolejo
                                              United States District Judge